

EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MALLINCKRODT PLC, *et al.*,<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 20-12522 (JTD)<br><br>(Jointly Administered) |
| Heather L. Barlow as Trustee of the MALLINCKRODT GENERAL UNSECURED CLAIMS TRUST,<br><br>                    Plaintiff,<br><br>      vs.<br>First Object, Inc.<br><br>                  Defendant. | Adv. Pro. No. 22-50426 (JTD) |

## DECLARATION OF SUNEEL KATAKAM IN SUPPORT OF FIRST OBJECT, INC.'S MOTION TO RE-OPEN ADVERSARY PROCEEDING, VACATE DEFAULT JUDGMENT AND SET ASIDE ENTRY OF DEFAULT

Pursuant to 28 U.S.C. § 1746, I, Suneel Katakam hereby declare under penalty of perjury:

1.      I am the Manager of First Object, Inc. ("First Object").

2.      I am familiar with the facts set forth herein and the subject matter of the foregoing *First Object Inc.'s Motion to Re-Open Adversary Proceeding, Vacate Default Judgment and Set Aside Entry of Default* (the "Motion").

3.      I am over eighteen (18) years of age and have never been convicted of a felony or other crime involving moral turpitude, and do not suffer from any mental or physical disability that would render me incompetent to make this declaration. I am able to swear, and I hereby do swear, that all facts set forth in this declaration are based upon my personal knowledge,

information learned from my review of relevant documents, or my own opinion based on my experience.

4.     I am authorized to submit this Declaration on behalf of First Object in support of the Motion.  If I were called upon to testify, I could and would testify to each of the facts set forth herein.

5.      First Object learned of the above-captioned adversary proceeding in early December 2022, via receipt of the Entry of Default and Default Judgment at its office located at 1320 Greenway Drive, Ste#855, Irving, TX 75038 (the "Shared Greenway Office").

6.     No employee of First Object received the Summons or Complaint at the addresses identified on the Certificate of Service or signed a Certified Return Receipt.  No employee of First Object received, nor signed for a signed a certified return receipt of the Summons and Complaint.

7.     First Object's employees work remotely and are located throughout the United States.  However, First Object maintains the Shared Greenway Office, which it shares with another business.  First Object's mail intake process at the Shared Greenway Office included certain procedures regarding receipt of correspondence related to any litigation or legal matters.

8.     The employee tasked with staffing the Shared Greenway Office and opening First Object's mail was instructed to review the received items including addressee information and forward the mail to the correct individual(s) at the company, whether it be the addressee or, if there is no addressee, the individual responsible for the items received. This procedure includes identification of lawsuit complaints and petitions.  In the event First Object receives such papers, the employee is instructed that such items be forwarded to Frist Object's management.

9.      Prior to the October 6, 2022, mailing date indicated on the Certificate of Service, the employee tasked with receiving mail at the Shared Greenway Office resigned from her position.  First Object sought to replace this employee promptly, but the position was not filled until after October 2022.  When the mail received at the Shared Greenway Office from this period was reviewed by First Object, the Summons and Complaint were not included.

10.      When First Object learned of the Entry of Default and Default Judgement, it promptly retained Delaware counsel to attempt a consensual resolution with the Trustee.  When no resolution could be reached, First Object promptly retained undersigned counsel to file this Motion.

11.      First Object represents that it has maintained adequate records regarding its business relationship with the Debtors and that any relevant witnesses will be available to testify in this matter.

12.      Exhibit A to the Complaint identifies "ST Shared Services, LLC" as the Debtor entity making the Transfers.  First Object preformed services for the Debtors pursuant a certain master services agreement (the "Services Agreement") entered by and between First Object and debtor Mallinckrodt, LLC.  A true and correct copy of the Services Agreement is attached hereto as Exhibit "1".  Services were also provided pursuant to a certain purchase order (the "Purchase Order"), issued by debtor Mallinckrodt Enterprises, LLC.  A true and correct copy of the Purchase Order in attached hereto Exhibit "2".

13.      First Object provided services to the Debtors during the Preference Period, subsequent to Transfers the Trustee seeks to Avoid.  The value of these services is $25,974.19.  See First Object invoice nos. 25046 and 25226 attached hereto as Exhibit "3".

14.     The Transfers paid 5 separate First Object invoices.  During the one year prior to the Preference Period, the Debtors paid First Object's invoices in a range of 47 to 70 days. 4 of the 5 preference period invoices were paid within that range.  First Object's Days to Pay Analysis is attached hereto as Exhibit "4".   Additionally, in my opinion, all of the Preference Period Transfers were made according to ordinary business terms within the industry for custom computer software systems analysis and design.

15.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: February 22, 2023

By: _____

Suneel Katakam
First Object, Inc.

EXHIBIT 1

# AMENDMENT TO
## STATEMENT OF WORK NO. __15__
By and between [Mallinckrodt LLC] ("Company")
and
**[First Object, Inc.]** ("Consultant")
Attached to
MASTER SERVICES AGREEMENT
by and between
**[Mallinckrodt LLC]** ("Mallinckrodt") and
**[First Object, Inc.]** ("Consultant")

**THIS AMENDMENT** (this "Amendment") is effective as of the last date of signature below (the "Amendment Effective Date") and is made to that certain Statement of Work No. __15__ dated 15 August 2019 by and between Company and Consultant (the "Statement of Work"). The Statement of Work is a supplement to, and is governed by that certain Master Services Agreement by and between Mallinckrodt and Consultant dated as of __21 July 2014__, as amended, (the "Agreement"), and shall be deemed to be a part thereof. Effective August 15, 2019, SOW #15 replaces SOW #14 as it represents a duration extension and a rate increase.

**WHEREAS**, the parties wish to modify the Statement of Work as set forth below.

**NOW THEREFORE**, for good and valuable consideration, the receipt of which is hereby acknowledged; and subject to the terms and conditions of the Statement of Work and the Agreement, Company and Consultant hereby agree that the Statement of Work is amended as follows:

1. <u>Modification of Section 2</u>. <u>Section 2</u> "Estimated Length of Engagement" of the Statement of Work is hereby amended and restated in its entirety as follows:

   "2. Estimated Length of Engagement: Statement of work shall continue from November 1 2019 – 30 June 2020.

2. <u>Modification of Section 3</u>. <u>Section 3</u> "Fees and cost estimate" of the Statement of Work is hereby amended and restated in its entirety as follows:

   "3. Fees and cost estimate: _$110 per work hour plus approved travel expenses; $166,000"

3. <u>Modification of Section 5</u>. <u>Section 5</u> "Maximum Fees and Costs" of the Statement of Work is hereby amended and restated in its entirety as follows:

   "5. Maximum Fees and Costs: Consultant's fees and costs under this Statement of Work shall not exceed this amount without prior written approval from Company: $166,000 plus approved travel expenses"

Except as herein amended, all terms, covenants and provisions of the Statement of Work are ratified, reaffirmed, and shall remain in full force and effect. All references therein to the Statement of Work shall hereafter refer to the Statement of Work as amended by this Amendment. All capitalized, undefined terms in this Amendment shall have the same meaning as defined in the Agreement. This Amendment shall be deemed incorporated into, and a part of, the Statement of Work.

**IN WITNESS WHEREOF**, the parties have executed this Amendment as of the Amendment

Effective Date.

**Acknowledged and Agreed to:**

Company

By: _____
Signature

Shrikant Ramachandran
Printed Name

Vice President and Chief Information Officer
Title (if applicable)

09/24/2019
Date

Consultant

By: _____
Signature

Ranjit Kumar
Printed Name

Manager of Operations
Title (if applicable)

08/09/2019.
Date

EXHIBIT 2

| | |
|---|---|
| **From:** | Barbara Vivoli [do_not_reply@mallinckrodt-sap.coupahost.com] |
| **Sent:** | Friday, November 22, 2019 2:15 PM |
| **To:** | KUMAR@1STOBJECT.COM |
| **Subject:** | Mallinckrodt Enterprises LLC Revised Purchase Order #1600013038 |
| **Attachments:** | purchase_order.html |



# Mallinckrodt Enterprises LLC
# PURCHASE ORDER

## FIRST OBJECT INC
1320 GREENWAY DR, 855
SUITE 855
IRVING, TX 75038
kumar@1stobject.com
Phone: +1 (972) 699-1818
PO NUMBER
    **1600013038-2**
DATE
    **04/04/19**
PAYMENT TERMS
    **NT45:Net 45 days**
SHIPPING TERMS

CURRENCY
    **USD**
CONTRACT
    **FIRSTOBJECTINC-MAS-0009297**
CONTACT
    **Matthew Vogelweid**

    **Matthew.Vogelweid@mnk.com**
Ship To
Mallinckrodt Enterprises LLC
675 McDonnell Blvd
Hazelwood, MO 63042
USA037
Attn: Matthew Vogelweid
Bill To
Mallinckrodt Enterprises LLC
Email invoices to: APInvoices.SAP@mallinckrodt.com
Attention To: Accounts Payable

- Note: Reference attached SOW 14

## Current Lines

| Line | Description | Qty | Unit | Price | Total | Delivery Date | Part Number |
|---|---|---|---|---|---|---|---|
| 1 | First Object - SOW No. 14 - Praveen Kodall - April 1, 2019 - Oct 31, 2019 | | | 125,000.00 | 125,000.00 | 2019-11-01 | |

| Line | Description | Qty | Unit | Price | Total | Delivery Date | Part Number |
|------|-------------|-----|------|-------|-------|---------------|-------------|
| 2 | First Object - SOW No. 14 - Praveen Kodall - Travel Expenses | | | 12,500.00 | 12,500.00 | 2019-11-01 | |
| 3 | First Object - SOW No. 14 - Praveen Kodall - April 1, 2019 - Oct 31, 2019 - Final invoice | | | 2,300.00 | 2,300.00 | 2019-11-15 | |
| 4 | First Object - SOW No. 15 - Praveen Kodall - November 1, 2020 - June 30, 2020 | | | 166,000.00 | 166,000.00 | 2019-11-15 | |
| 5 | First Object - SOW No. 14 - Praveen Kodall - SOW No 15 Travel Expenses | | | 16,600.00 | 16,600.00 | 2019-11-15 | |

**0** Units

~~137,500.00 USD~~

**322,400.00** USD

## Added Lines

| Line | Description | Qty | Unit | Price | Total |
|------|-------------|-----|------|-------|-------|
| 3 | First Object - SOW No. 14 - Praveen Kodall - April 1, 2019 - Oct 31, 2019 - Final invoice | | | 2,300.00 | 2,300.00 |
| 4 | First Object - SOW No. 15 - Praveen Kodall - November 1, 2020 - June 30, 2020 | | | 166,000.00 | 166,000.00 |
| 5 | First Object - SOW No. 14 - Praveen Kodall - SOW No 15 Travel Expenses | | | 16,600.00 | 16,600.00 |

**INVOICING INSTRUCTIONS**

Submit all invoices related to this Purchase Order (sometimes referred to herein as this "PO") to APInvoices.SAP@MNK.com
The requester name, email address, PO number and PO line number must be clearly noted on the invoice.
Submit one invoice per PDF Document. Only one PDF attachment per email is acceptable.
Any questions related to this PO should be directed to the PO requester, who is listed on the PO.

**INTERNATIONAL SHIPMENTS**

When Buyer is the Importer of Record, please provide the following to pharma.tc@mallinckrodt.com :  (a) commercial invoice, (b) MSDS, (c) special  handling instructions (dry ice, refrigeration, etc.), (d) HTS, and (e) Certificate of Origin.

**ACKNOWLEDGE ORDER IMMEDIATELY AND ADVISE OF SHIPPING DATE:**

Please enter the order of Buyer for goods and/or services specified herein, subject only to the terms, conditions, and instructions included in this Purchase Order, and to any additional specifications, drawings, and/or additional terms and conditions referenced herein or attached hereto.  Any other terms set forth in Seller's acceptance hereof are hereby rejected by Buyer.

**MALLINCKRODT PURCHASE ORDER TERMS AND CONDITIONS**

**1. APPLICABILITY.** The purchase and sale of Goods and/or Services by Buyer from Seller pursuant to a Purchase Order (including any repaired or replacement Goods provided, or any Services re-performed, by Seller thereunder) are subject to the terms and conditions of a written agreement by and between Buyer and Seller under which Buyer submits a Purchase Order, or, in the absence of such written agreement, these Terms.

**2. DEFINITIONS.** "Affiliate" means, as to a particular person or entity, any person or entity controlling, controlled by or under common control with such person or entity. "Buyer" means Mallinckrodt LLC or any of its Affiliates indicated on any Purchase Order. "Goods" means the raw materials, equipment, finished goods, parts, components, articles, or other items covered by a Purchase Order, including any work product and other deliverables, if any, delivered in connection with the performance of any Services. "Purchase Order" means the purchase order issued

by Buyer to Seller. "Services" means the services, work or other performance obligations covered by a Purchase Order. "Seller" means the individual or entity providing the Goods and/or Services covered by a Purchase Order. "Terms" means these Purchase Order Terms and Conditions, which may be amended by Buyer at any time, and from time to time, without notice to Seller.

**3. ACCEPTANCE.** 3.1. The Purchase Order is an offer by Buyer to purchase the Goods and/or Services (as applicable) from Seller in accordance with and subject to the terms and conditions herein and therein. The Purchase Order is not binding on Buyer until it is accepted by Seller. Each Purchase Order is accepted by Seller upon receipt unless Seller delivers written notice to Buyer of Seller's objection within three (3) business days from the date Seller received the Purchase Order. No contract between Buyer and Seller will exist except as herein provided.

3.2. Seller's acceptance of the Purchase Order is expressly limited to these Terms. Any invoice, acknowledgement or other communication issued by Seller in connection with the Purchase Order will be construed to be for record and accounting purposes only, and any terms or conditions set forth in such communication will not apply to the Purchase Order. Any additional or different terms proposed by Seller are expressly rejected and will be deemed a material alteration hereof, unless expressly assented to in writing by Buyer. Furthermore, Buyer will not be bound by, any "disclaimers" or "click to approve" terms or conditions now or hereafter contained in any website used by Buyer in connection with the Goods and/or Services or the Purchase Order.

3.3. The Purchase Order, together with these Terms and any documents incorporated herein and therein by reference, constitutes the sole and entire agreement of Buyer and Seller with respect to the purchase and sale of the Goods and/or Services, and supersedes all prior or contemporaneous understandings, agreements, negotiations, representations, warranties and communications, both written and oral, with respect to the subject matter of the Purchase Order.

**4. DELIVERY.** Seller will deliver the Goods and/or perform the Services on the date(s) specified in the Purchase Order (the "Delivery Date") or the agreed to date in the order confirmation. If no Delivery Date is specified, Seller will deliver the Goods and/or Services within thirty (30) days of Seller's receipt of the Purchase Order (which date will be the Delivery Date). Delivery Dates are firm and TIME IS OF THE ESSENCE WITH RESPECT TO DELIVERY. Buyer has no obligation to accept deliveries that are not made on the Delivery Date. If Seller fails to meet the Delivery Date, Buyer may terminate the Purchase Order by providing written notice to Seller or procure replacement Goods and/or Services and Seller will be liable to Buyer for all costs incurred by Buyer as a result of such failure. All Goods will be delivered to, and all Services will be performed at, the address specified in the Purchase Order (the "Delivery Location") during Buyer's normal business hours or as otherwise instructed by Buyer.

**5. SHIPPING TERMS.** Delivery of the Goods covered by the Purchase Order will be made in accordance with the delivery and shipping terms specified in the Purchase Order. If no shipping terms are specified, all deliveries of Goods to and from U.S. locations will be made FOB Delivery Location. Seller shall not charge Buyer for any transportation or storage costs. When Goods are delivered to a carrier for transportation, Seller will give prompt written notice to Buyer and provide Buyer all documents necessary to release the Goods to Buyer. A "PO Number" indicated in the Purchase Order must appear on all applicable shipping documents, shipping labels, bills of lading, air waybills, invoices, correspondence and any other documents pertaining to the Purchase Order.

**6. TITLE; RISK OF LOSS.** Title to the Goods covered by the Purchase Order will transfer to Buyer upon delivery of the Goods to the Delivery Location. Delivery of the Goods is not complete until such Goods have actually been received and accepted by Buyer. Seller bears all risk of loss or damage to the Goods until delivery of the Goods to the Delivery Location and acceptance of the Good by Buyer.

**7. PACKAGING.** All Goods covered by the Purchase Order must be packed for shipment according to Buyer's instructions or, if there are no instructions, in a manner sufficient to ensure that the Goods are delivered in undamaged or unadulterated condition. Seller must provide Buyer prior written notice if it requires Buyer to return any packaging materials. Any return of such packaging materials will be made at Seller's sole cost and expense.

**8. QUANTITY.** The quantity of Goods set forth in the Purchase Order must be delivered in full and not be changed without Buyer's prior written consent. If Seller delivers more or less than the quantity of Goods ordered, Buyer may, in its sole discretion, accept or reject all or any portion of the Goods. Any rejected Goods will be returned to Seller at Seller's risk and sole cost and expense. If Buyer accepts the delivery of Goods at the increased or reduced quantity, the Price for the Goods shall be adjusted on a pro-rata basis. The Purchase Order is a non-exclusive agreement. Buyer is free to engage any third party to provide the same or similar goods or services to be provided under the Purchase Order. Buyer is not obligated to any minimum purchase or future purchase obligations under the Purchase Order.

**9. SPECIFICATIONS.** To the extent Buyer furnishes specifications, draws, samples or other descriptions for Goods and/or Services (collectively, "Specifications") to Seller, or Seller furnishes Specifications to Buyer, has the reserves the right at any time to make changes or modifications, in its sole discretion, to such Specifications for Goods and/or Services covered by the Purchase Order. Any difference in Price or time for performance resulting from such change or modification to the Specifications shall be equitably adjusted and approved by Buyer in writing. All Specifications furnished by Seller are subject to Buyer's prior written approval.

**10. BUYER'S MATERIALS; SELLER'S TOOLING.** All of Buyer's tooling, equipment, materials, goods and other property ("Buyer's Materials") necessary for Seller to provide the Goods and/or Services shall remain the sole and exclusive property of Buyer and shall (i) be held by Seller as bailee for hire for use only in fulfilling the requirements of the Purchase Order, (ii) be kept separate and clearly identified by Seller as the property of Buyer, and (iii) be fully insured by Seller. Seller waives and releases Buyer from any and all claims for injury or damage to Seller arising out of or in connection with the use of Buyer's Materials. Seller at its own expense shall furnish, keep in good condition, insure and replace when necessary all tooling, equipment, materials, goods and other property ("Seller's Tooling") necessary for Seller to fulfill the requirement of the Purchase Order. If Seller uses special tooling or other material relating principally to the Purchase Order, Buyer may, in its sole discretion, purchase from Seller, and take title to and possession of, such special tooling or material for its unamortized cost.

**11. CONFIDENTIALITY.** Seller shall maintain in strict confidence all Confidential Information provide to or learned by Seller during the course of performance of the Purchase Order and shall not use or copy any Confidential Information, or authorize or permit others to use any Confidential Information, for any purposes other than to fulfill the requirements of the Purchase Order. The term "Confidential Information" means the Purchase Order, these Terms and Conditions all business strategies, plans and procedures, business information, proprietary information, scientific information, product plans, sales information and plans, data, and trade secrets of Buyer, as well as any other information and materials that are deemed confidential or proprietary to or by Buyer (including, without limitation, all information and materials of Buyer's customers and their other consultants). Notwithstanding the foregoing, "Confidential Information" shall not include any information which (i) is or becomes known to the general public through no act or omission of Seller or any other person with an obligation of confidentiality to Buyer, or (ii) is required to be disclosed pursuant to applicable law (provided, however, that prior to any disclosure of Confidential Information as required by applicable law, Seller shall advise Buyer of such required disclosure promptly upon learning thereof and shall cooperate with Buyer in order to afford it a reasonable opportunity to contest or limit such disclosure).

**12. PRICES; MOST FAVORED CUSTOMER.**

12.1. The price of the Goods and/or Services is the price stated in the Purchase Order (the "Price"). If no Price is specified in the Purchase Order, the Price will be the lesser of (i) the price set forth in Seller's published price list in force as of the date of the Purchase Order, or (ii) the price last quoted or billed by Seller at the prevailing market price. The Price is not subject to increase for the duration of the Purchase Order and no increase in Price shall be effective without Buyer's prior written consent.

12.2. Seller represents, warrants, certifies and covenants that it is selling Goods and/or Services at the lowest Prices and upon the most favorable terms (including, without limitation, volume, quality and/or payment terms) that it offers to any buyer for goods or services of the same or similar quality as provided under the Purchase Order. If Seller reduces its prices for such Goods or Services prior to accepting the Purchase Order or during the term of the Purchase Order, Seller agrees to reduce the Prices charged to Buyer accordingly. Seller warrants that the Price of Goods and/or Services is complete and inclusive of all charges including, without limitation, charges for shipping, packaging, labeling, custom duties, taxes, insurance, storage, boxing and crating. No additional charges will be added to the Price.

**13. PAYMENT TERMS; SET-OFF.**

13.1. Seller shall not issue an invoice to Buyer prior to delivery of the Goods and/or completion of the Services and then only in accordance with these Terms. All invoices and payments hereunder will be denominated in US dollars. Buyer will pay all properly invoiced amounts due to Seller in accordance with the payment terms specified in the Purchase Order. If no payment terms are specified, Buyer will pay all properly invoiced amounts due to Seller within seventy five (75) days after Buyer's receipt of such invoice, except for any amounts disputed by Buyer in good faith. In the event of a payment dispute, Buyer will deliver a written statement to Seller listing all disputed items. The parties will seek to resolve all such disputes expeditiously and in good faith. Seller shall continue performing its obligations under the Purchase Order notwithstanding any such payment dispute.

13.2. Without prejudice to any other right or remedy it may have, Buyer reserves the right to set off or recover, at any time, any amount owing to it by Seller against any amount payable by Buyer to Seller.

**14. INSPECTION; REJECTION.**

14.1. All Goods and Services are subject to Buyer's right of inspection and rejection on or after the Delivery Date. Buyer, in its sole discretion, may inspect all or a sample of the Goods and/or Services, and may reject all or any portion of the Goods and/or Services if it determines the Goods and/or Services are defective or otherwise do not conform to the descriptions or specifications delivered in connection with the Purchase Order or otherwise communicated to Seller in writing. If Buyer rejects any portion of the Goods and/or Services, Buyer has the right, in its sole discretion, effective upon written notice to Seller, to: (i) terminate all or any portion of the Purchase Order; (ii) accept the defective or non-conforming Goods and/or Services (as applicable) at a reduced Price; (iii) reject the defective or non-conforming Goods and/or Services and require the replacement or re-performance thereof; or (iv) reject the defective or non-conforming Goods and/or Services and require a refund of the Price thereof and any other related costs incurred by Buyer.

14.2. If Buyer requires replacement or re-performance of non-conforming Goods and/or Services, Seller will, at its sole cost and expense, promptly replace or re-perform the non-conforming Goods and/or Services and pay for all related costs and expenses, including, without limitation, transportation charges for the return of the non-conforming Goods and the delivery of replacement Goods. If Seller fails to timely deliver replacement Goods or re-perform Services, Buyer may replace the non-conforming Goods and/or Services with goods and/or services from a third party and charge Seller the cost thereof and terminate the Purchase Order for cause.

14.3. Any inspection or other action by Buyer will not reduce or otherwise affect Seller's obligations under the Purchase Order, and Buyer will have the right to conduct further inspections after Seller has carried out its remedial actions. Acceptance of Goods and/or Services by Buyer will not occur unless and until: (i) with respect to Goods installed by Seller, any acceptance tests or programs described in the Purchase Order or attachments thereto are completed to Buyer's satisfaction, as evidenced by an acceptance certificate signed by Buyer; (ii) with respect to Goods not installed by Seller, Buyer has not notified Seller, within thirty (30) days following receipt of the Goods by Buyer, that Goods are defective or otherwise do not conform to Buyer's specifications; or (iii) with respect to any Services performed by Seller, such Services are completed to Buyer's satisfaction.

15. **INSURANCE.** Seller shall maintain in full force and effect from the date of first sale of Goods and/or Services insurance coverages adequate to insure its risk under the Purchase Order including, without limitation: (i) Commercial General Liability insurance with a limit of $1,000,000 for bodily injury and property damages; (ii) statutory Worker's Compensation insurance; (iii) if coming onto the Buyer's property statutory Automobile Liability insurance; and (vi) if performing professional services for Buyer, Professional Liability insurance with a limit of $2,000,000 and a retroactive date of at least the first date Services are performed for Buyer or earlier. The Seller will provide certificates of insurance as and when requested by the Buyer. Insurance shall not satisfy, modify or limit Seller's obligations or liability.

**16. GENERAL WARRANTIES.**

16.1. With respect to all Goods to be delivered under the Purchase Order, Seller warrants to Buyer that all Goods will: (i) be merchantable; (ii) be free from any defects, latent or patent, in workmanship, materials and design; (iii) be manufactured, packaged, labeled, handled, shipped and stored by Seller or its agents in a good and workman-like manner consistent with industry standards and in strict accordance with all applicable specifications, drawings, designs, samples and other requirements specified in the Purchase Order or by Buyer; (iv) be fit, safe and effective for their intended uses and purposes, and operate as intended; (v) be free and clear of all liens, security interests or other encumbrances; and (vi) not infringe or misappropriate any patents, trademarks or copyrights or any other intellectual property rights of any third party. With respect to all Services to be performed under the Purchase Order, Seller warrants to Buyer that: (i) Seller will perform the Services using personnel of required skill, experience and qualifications and in a professional and workmanlike manner in accordance with generally recognized industry standards for similar services and in accordance with any and all specifications provided by Buyer; (ii) Seller will devote adequate resources to meet its obligations under the Purchase Order; and (iii) Seller's performance of the Services will not infringe or misappropriate any patents, trademarks or copyrights or any other intellectual property rights of any third party.

16.2. Seller further warrants to Buyer that: (i) Seller's acceptance of, or performance under, the Purchase Order does not violate any other obligations of Seller to any third party; (ii) Seller has the full legal right to provide all Goods and/or Services, and there is no pending or threatened claim, litigation or proceeding against Seller with respect to any Goods and/or Services, or any component thereof, alleging infringement of any patent or copyright or violation of any trade secret or any other proprietary right of any third party; and (iii) Seller shall obtain and maintain all permits, licenses, and consents required in connection with its performance under the Purchase Order.

16.3. All warranties set forth in these Terms will remain in effect for a period of one (1) year from the date of acceptance of the Goods and/or Services (as applicable) by Buyer, and will not be deemed waived by reason of Buyer's receipt, inspection, acceptance of, or by payment for, the Goods and/or Services. The warranties expressed in these Terms are in addition to and construed as consistent and cumulative with each other and with all warranties provided, express or implied, by law or equity (collectively, the "Warranties"). It is the intent of Buyer and Seller that if any Warranties are held to be inconsistent, Buyer may, at any time, including in the course of a suit for breach, select which Warranty will be excluded from the Purchase Order.

16.4. All Warranties shall run to Buyer, its customers and subsequent owners of the Goods and/or Services to which they relate. There are no exclusions, limitations, or disclaimers of warranty other than those that may be expressly recited in these Terms.

16.5. Notice of breach of Warranty may be given orally or in writing; said notice need not include a clear statement of all objections that will be relied upon by Buyer as the basis for breach. All Warranties will be construed as conditions as well as promises. Any applicable statute of limitations shall run from the date of Buyer's discovery of the noncompliance of the Goods and/or Services with the foregoing Warranties.

17. **COMPLIANCE WITH LAWS.** Seller certifies, represents, and warrants that it shall: (a) comply with all federal, state, and local laws and regulations applicable to its operations, including, without limitation, those dealing with employment opportunity and affirmative action including Executive Order 11246 (Equal Opportunity), 39 U.S.C. § 4212(a) (Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era), and 29 U.S.C. § 793 (Affirmative Action for Workers with Disabilities), and any amendment and applicable regulations pertaining thereto; (b) comply with all federal, state and local laws and regulations applicable to the manufacture, packaging, labeling, shipping and storage of Goods, including, without limitation, current good manufacturing practices promulgated by the U.S. Food and Drug Administration; (c) comply with all federal, state, and local laws and regulations related to the pollution or protection of the environment or human health and safety, including, without limitation, 15 U.S.C. § 2601 (the U.S. Toxic Substances Control Act of 1976, as amended); (d) comply with all federal, state, local, and other applicable laws, regulations, conventions, or treaties prohibiting any form of child labor or other exploitation of children in the manufacturing and delivery of the Goods and/or Services; (e) comply with all import/export laws and restrictions and regulations of the U.S. Department of State, Department of Commerce or any other U.S. or foreign agency or authority; (f) comply with the U.S. Foreign Corrupt Practices Act and any applicable local anti-bribery and corruption laws; (g) comply with 29 U.S.C. § 651 (the Occupational Safety and Health Act of 1970) and any applicable requirements promulgated by the U.S. Occupational Safety and Health Administration; (h) certify that the Goods will at no time contain any "conflict minerals" as defined in the Dodd-Frank Wall Street Reform and Consumer Protection Act, or any other mineral or derivatives thereof determined by the U.S. Department of State to be financing conflict in the Democratic Republic of Congo; and (i) certify that neither it nor its principals were or are debarred, suspended, or proposed for debarment by

the U.S. government in accordance with the provisions of 48 C.F.R. § 52.209-6. From time to time, at Buyer's request, Seller shall provide certificates to Buyer relating to compliance with any applicable legal requirements.

**18. INDEMNIFICATION.** Seller shall indemnify, defend and hold harmless Buyer, its affiliates, and their respective directors, officers, employees, customers and agents, from and against any and all third party claims, demands, causes of action, losses, damages, direct and indirect costs and expenses or other liability (including costs of product recall), including reasonable attorneys' fees, arising out of or resulting in any way from: (i) Seller's manufacture and/or supply of Goods to Buyer; (ii) Seller's performance of Services; (iii) any defect in or recall of the Goods; (iv) the negligence or willful misconduct of Seller, its agents or employees; (v) any claim for bodily injury or death, damage to property or any claim by an employee or subcontractor of Seller for wages and benefits; (vi) Seller's breach of any representation, warranty, covenant or other obligation hereunder; and (vii) the infringement of any third party patent, trademark, copyright or other proprietary rights with respect to (A) Services performed by Seller, and/or (B) Goods supplied by Seller (including, without limitation, with respect to Seller's manufacture and/or Buyer's use or possession thereof). Seller's obligation to indemnify will survive the expiration or termination of the Purchase Order by either party for any reason.

**19. LIMITATION OF LIABILITY.** BUYER SHALL NOT BE LIABLE TO SELLER OR ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES, WHETHER IN AN ACTION IN CONTRACT OR TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE AND STRICT LIABILITY) RESULTING FROM BUYER'S PERFORMANCE OR ANY FAILURE TO PERFORM HEREUNDER INCLUDING, WITHOUT LIMITATION, LOSS OF ANTICIPATED PROFITS OR BENEFITS, EVEN IF BUYER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**20. TERMINATION.** Buyer may, by written notice to Seller, terminate all or any portion of the Purchase Order: (i) for convenience; (ii) if Seller fails to complete or deliver any part thereof when required; or (iii) if Seller is in breach of any term of the Purchase Order or these Terms, including, without limitation, any of the Warranties set forth in Section 13. If Buyer terminates the Purchase Order for convenience, Buyer will pay Seller for the cost of materials and labor incurred (and not otherwise mitigated) on ordered Goods and/or Services prior to the date of termination, provided that Seller takes all steps reasonably necessary to mitigate such costs.

**21. FORCE MAJEURE.** Neither party will be liable to the other party for any delay or failure in performing its obligations under the Purchase Order (including failure to take delivery of the Goods) to the extent such delay or failure is caused, without such party's fault or negligence, by a Force Majeure Event. For purposes of these Terms, a "Force Majeure Event" refers to the occurrence of unforeseeable and/or unavoidable circumstances beyond a party's control that, by their nature, make such party's performance commercially impractical, including, without limitation, acts of God or the public enemy, fire, flood, acts of war, government action, accident, earthquakes, explosion, epidemic, invasion, hostilities, terrorist acts, riots, strike, embargoes or industrial disturbances. A party's economic hardship or changes in market conditions are not considered Force Majeure Events. The party affected by a Force Majeure Event shall give prompt written notice to the other party of such cause, and shall take all reasonable steps necessary to relieve the effect of such causes as rapidly as possible. If a Force Majeure Event prevents Seller from carrying out its obligations under the Purchase Order for a continuous period of thirty (30) days or more, Buyer may terminate the Purchase Order immediately by giving written notice to Seller.

**22. GENERAL.**

22.1. Every right and remedy reserved by Buyer will be cumulative and additional to any other or further remedies provided in law or equity or in these Terms.

22.2. The parties' rights and obligations arising out of or in connection with the Purchase Order and these Terms shall be governed and construed according to the laws (both substantive and procedural) of the State of New Jersey without regard to principles of conflicts of law. The application of the United Nations Convention on Contracts for the International Sale of Goods (CISG) shall not apply and is hereby expressly excluded.

22.3. The parties agree that the state and federal courts in and for the State of New Jersey shall be the courts of exclusive jurisdiction and venue for any action dispute, controversy or claim arising out of or relating to the Purchase Order. Neither the United Nations Convention on Contracts for the International Sale of Goods (CISG) nor the Convention on the Limitation Period for the International Sale of Goods shall be applicable to the Purchase Order or otherwise be used in the interpretation of these Terms.

22.4. Seller may not assign the Purchase Order or any right or obligation thereunder or hereunder without the prior written consent of Buyer. The Purchase Order and these Terms shall be binding upon and inure to the benefit of parties and their respective successors and permitted assigns. Any attempted assignment or transfer in violation of this Section will be void *ab initio*.

22.5. Nothing contained in the Purchase Order or in these Terms is intended or shall be construed to create or establish an agency, partnership, or joint venture relationship between Buyer and Seller. Neither Buyer nor Seller shall have any right or authority to assume or create, by action, in writing or otherwise, any obligation of any kind, express or implied, in the name of or on behalf of the other party.

22.6. All notices or other communications required or permitted to be given under the Purchase Order or these Terms shall be deemed to have been duly given when personally received by the intended recipient or (i) when delivered by nationally recognized overnight courier (with confirmation of receipt), (ii) when delivered by e-mail or facsimile (with confirmation of receipt), or (iii) three (3) business days after having been mailed by first class registered or certified mail, return receipt requested, postage prepaid, addressed to the applicable party at the address indicated on the Purchase Order or such other address as any party may in the future specify in writing to the other party.

22.7. No change to the these Terms is binding upon Buyer unless it is in writing, specifically states that it amends these Terms and is signed by an authorized representative of Buyer.

22.8. Except as otherwise set forth herein, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from the Purchase Order will operate or be construed as a waiver thereof. Waiver by either party of any default of the other will not operate to excuse the defaulting party from further compliance with this contract, nor will any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

22.9. The only official version of the Purchase Order, and all communications related to the Purchase Order, shall be in the English language.

EXHIBIT 3

# Invoice

**First Object , Inc**

1320 Greenway Drive
Suite # 855
Irving, Texas 75038

| Date | Invoice # |
|------|-----------|
| 10/14/2020 | 25046 |

| Bill To |
|---------|
| Mallinckrodt LLC<br>Accounts payable<br>po box 9001<br>Hampton , NJ 08827 |

| P.O. No. | Terms |
|----------|-------|
|  | Net 45 |

| Item | Quantity | Description | Rate | Amount |
|------|----------|-------------|------|--------|
| P K | 168 | Praveen Kodali PO # 1600013038 from 09/01/2020 to 09/30/2020 | 110.00 | 18,480.00 |

It's been a pleasure working with you!

**Total**    $18,480.00

**First Object , Inc**

1320 Greenway Drive
Suite # 855
Irving, Texas 75038

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/2/2020 | 25226 |

| Bill To |
|---------|
| Mallinckrodt LLC<br>Accounts payable<br>po box 9001<br>Hampton , NJ 08827 |

| P.O. No. | Terms |
|----------|-------|
|  | Net 45 |

| Item | Quantity | Description | Rate | Amount |
|------|----------|-------------|------|--------|
| P K | 176 | Praveen Kodali PO # 1600013038 from 10/01/2020 to 10/31/2020 | 110.00 | 19,360.00 |

It's been a pleasure working with you!

**Total**  $19,360.00

EXHIBIT 4

FIRST OBJECT - Mallinckrodt Days to Pay Analysis - pre-pref & pref

| Received Date | Amount Received | Check Number | Invoice Number | Invoice Date | For the period of Services | Days to Paid |
|---|---|---|---|---|---|---|
| 7/30/2019 | $18,000.00 | 20005217 | 23949 | 6/5/2019 | May-19 | 55 |
| 8/26/2019 | $16,000.00 | 20005353 | 24067 | 7/9/2019 | Jun-19 | 48 |
| 9/30/2019 | $17,600.00 | 20005511 | 24186 | 8/7/2019 | Jul-19 | 54 |
| 10/21/2019 | $18,000.00 | 20005604 | 24238 | 9/4/2019 | Aug-19 | 47 |
| 11/19/2019 | $16,000.00 | 20005703 | 24307 | 10/3/2019 | Sep-19 | 47 |
| 1/14/2020 | $18,400.00 | 20005873 | 24375 | 11/5/2019 | Oct-19 | 70 |
| 1/22/2020 | $16,720.00 | 20005960 | 24474 | 12/5/2019 | Nov-19 | 48 |
| 2/25/2020 | $14,520.00 | 20006090 | 24543 | 1/6/2020 | Dec-19 | 50 |
| 3/23/2020 | $19,360.00 | 20006169 | 24624 | 2/7/2020 | Jan-20 | 45 |
| 4/22/2020 | $17,600.00 | 20006272 | 24686 | 3/1/2020 | Feb-20 | 53 |
| 6/5/2020 | $19,360.00 | 20006377 | 24733 | 4/10/2020 | Mar-20 | 56 |
| 7/14/2020 | $19,360.00 | 20006482 | 24768 | 5/11/2020 | Apr-20 | 64 |
| 8/5/2020 | $17,600.00 | 20006558 | 24866 | 6/2/2020 | May-20 | 64 |
| 9/24/2020 | $57,200.00 | N/A | 24909, 24941, 24971A | 7/6/2020; 8/3/2020; 9/17/2020 | Jun-20, Jul-20, Aug-20 | 80 for Jun; 52 for Jul; 7 for Aug |